THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant, *v.* THE AUBURN INTERURBAN ELECTRIC RAILROAD COMPANY, Respondent.

1. APPEAL — WHEN FAILURE TO FIND OTHER FACTS IS NOT REVIEWABLE ERROR. Where a judgment is sustained by findings of fact and conclusions of law which are supported by evidence, the failure of the trial court to find other facts, claimed to have been established by evidence, is not an error of law reviewable in the Court of Appeals.

2. STREET SURFACE RAILROADS — EXTENSION THEREOF UNDER SECTION 90 OF RAILROAD LAW, PRIOR TO THE ENACTMENT OF SECTION 59a OF THE SAME LAW. Before 1902, when section 59a of the Railroad Law (L. 1902, ch. 226) was enacted, a street surface railroad could extend its lines under section 90 of that law, without obtaining from the board of railroad commissioners a certificate as to public convenience and necessity; but since the enactment of section 59a, no extension of a street surface railroad, that will practically parallel such a road, already constructed and in operation, can be made without such a certificate. The provisions of section 59a, therefore, do not apply to an extension of the line of a street surface railroad corporation incorporated in 1895, which in 1901 filed a statement under section 90 for a proposed extension of its line.

*N. Y. C. & H. R. R. R. Co.* v. *Auburn I. E. R. R. Co.*, 79 App. Div. 645, affirmed.

(Argued February 24, 1904; decided March 15, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 30, 1903, affirming a judgment in favor of defend-

ant entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank Hiscock, Thomas Emery* and *Ira A. Place* for appellant. The projected extension of defendant's street surface railroad is a work of such character as the law forbids construction of unless and until the board of railroad commissioners shall certify that public convenience and necessity require it. (*Matter of N. H. R. R. Co.*, 76 Hun, 76; *Matter of A., etc., R. R. Co.*, 87 Hun, 578; *Matter of K., etc., R. R. Co.*, 6 App. Div. 241; *Mc Williams* v. *Jewett*, 14 Misc. Rep. 491; *Matter of A. & W. R. Co.*, 37 App. Div. 162; *Blaschko* v. *Wurster*, 156 N. Y. 437; *Kilbourne* v. *Bd. of Suprs.*, 62 Hun, 210; *U. S.* v. *Fisher*, 2 Cranch, 358; *U. S.* v. *Freeman*, 3 How. [U. S.] 556; *Matter of G. & J. Ry. Co.* v. *G. & S. R. R. Co.*, 172 N. Y. 462.)

*George Barron* for Skaneateles Railroad Company, by permission of the court. The certificate of the board of railroad commissioners that the construction, maintenance and operation of the defendant's so-called extension of its road from Skaneateles to the city of Syracuse "is a public convenience and a necessity," was a prerequisite to its right to construct the same. (*People ex rel.* v. *Lacombe*, 94 N. Y. 43; *Matter of G. & J. R. R. Co.* v. *G. & S. R. R. Co.*, 172 N. Y. 462; *C. R. Bridge* v. *W. Bridge*, 11 Pet. 20; *Matter of A., etc., R. Co.*, 86 Hun, 578; *Matter of K., etc., R. Co.*, 6 App. Div. 245; *Mc Williams* v. *Jewett*, 14 Misc. Rep. 491; *Matter of A. & U. R. Co.*, 37 App. Div. 162; *People ex rel.* v. *Railroad Comrs.*, 160 N. Y. 202; *Bell* v. *Mayor, etc.*, 105 N. Y. 139; *Delafield* v. *Brady*, 108 N. Y. 524.)

*William Nottingham* for respondent. Section 59 of the Railroad Law does not apply to extensions of street surface railroads under section 90, but has reference only to the new

roads described in the articles of association of railroad corporations organized after the passage of that act. (L. 1890, ch. 565, §§ 59, 90.) The passage by the legislature of chapter 226 of the Laws of 1902, amending section 59a of the Railroad Law so as to require the consent of the railroad commissioners to extensions of street railroads outside of cities in cases where existing street surface railroads in operation would be thus paralleled, amounted to a declaration that previous to the amendment no extensions under section 90 were within the . jurisdiction of the railroad commissioners. (*Matter of Miller*, 110 N. Y. 216; *Matter of Harbeck*, 161 N. Y. 211; *People ex rel.* v. *Democratic Committee*, 164 N. Y. 335; *A. & T. Co.* v. *Syme*, 163 N. Y. 54, 57; *Angevine* v. *Fleischmann*, 55 App. Div. 106, 109.) The interpretation which had been made of sections 59 and 90, before the above amendment of section 59a, by the uniform practice throughout the state of making extensions of street surface railroads under the latter section without previous application to the railroad commissioners for a certificate of public convenience and necessity under section 59 was proper and should now be adopted. (Cooley's Const. Lim. 67; Endlich on Interp. of Stat. 505; *People* v. *Dayton*, 55 N. Y. 378; *Matter of W. S., etc., R. R. Co.*, 115 N. Y. 442; *Robertson* v. *Downing*, 127 U. S. 613; Greenl. on Ev. [10th ed.] 238; Phillips' Ev. [4th Am. ed.], 801, 802; *Meriam* v. *Harsen*, 2 Barb. Ch. 233; *Troup* v. *Haight*, Hopk. Ch. 272.) The provisions of section 90 of the Railroad Law authorize the defendant to make this extension of six miles from the village of Skaneateles to the village of Marcellus, or even to extend seventeen miles to the city of Syracuse, if it had so elected. The statute prescribes no limit to the right to extend. (*Bohmer* v. *Haffen*, 35 App. Div. 381; *D., L. & W. R. R. Co.* v. *S., L. & B. R. Co.*, 28 Misc. Rep. 456; 43 App. Div. 621.)

WERNER, J.   This action was brought to restrain the defendant from constructing and operating an alleged proposed extension of its street surface railroad between the vil-

lage of Skaneateles and the city of Syracuse, in the county of Onondaga. The complaint was framed upon the theories: (1) That the alleged extension was invalid because the defendant had failed to obtain from the board of railroad commissioners a certificate that public convenience and necessity required it, and (2) that the so-called extension was such only in name and was in reality a new road, the construction and operation of which was illegal without such certificate. These allegations of the complaint were met by the denials of the answer, and upon the issue thus joined and the proofs made, the defendant was given a judgment, which has been affirmed by the Appellate Division.

The appellant now contends that the findings of fact and conclusions of law of the learned trial court do not support the judgment, because the allegations of the complaint and the evidence given in support thereof tend to prove the construction and operation of a proposed extension between Skaneateles and Syracuse, while the only findings and conclusions upon the subject are to the effect that a *bona fide* extension was projected and made between Skaneateles and Marcellus. Of this contention it is enough to say that there is evidence to support the findings and conclusions made, and these are sufficient to sustain the judgment rendered, unless the main contention of the plaintiff as to the construction of sections 59 and 90 of the Railroad Law is upheld, in which event the judgment must, of course, be reversed without regard to the evidence or the findings of fact based upon it.

The failure of the trial court to find certain facts which the appellant claims to have established by evidence is not, in the present state of this record, an error of law reviewable by this court (*National Harrow Co.* v. *Bement & Sons*, 163 N. Y. 505); and if there is any evidence to support the findings of fact actually made, the result in that regard is binding upon this court, even though a different conclusion should or might have been reached in the courts below. (*Ostrom* v. *Greene*, 161 N. Y. 363.)

In the last analysis, therefore, the only question that we can

review is whether the extension of defendant's road, projected and constructed as found by the trial court, was valid under the statute, without the certificate of the board of railroad commissioners as to the public convenience and necessity thereof.

The defendant was organized in 1895 for the purpose of constructing an .electric street surface railroad over certain routes described in its charter.　One of these routes extended from a given point in the .city of Auburn in the county of Cayuga, over and along stated courses to the intersection of Genesee street with the easterly boundary of the village of Skaneateles in the county of Onondaga.　The defendant had complied with the then existing requirements of section 59 of the Railroad Law which, among other things, provided that " no railroad corporation hereafter formed shall exercise the powers conferred by law upon such corporations or begin the construction of its road　＊　＊　＊　until the Board of Railroad Commissioners shall certify that　＊　＊　＊　public convenience and a necessity require the construction of said railroad as proposed in said articles of association."　The route above referred to was one of the routes specified in the defendant's articles of association.　At the time of the commencement of this action the defendant had constructed and was operating about six and one-half miles of its road over that route, from the point of its beginning in the city of Auburn to a point in Genesee street at or near its intersection with Jordan street in the village of Skaneateles, and was about to begin the construction of the remainder of its road along Genesee street from its intersection with Jordan street to the easterly boundary of the village of Skaneateles.　After the completion of its road along this route and on the 2d day of October, 1901, the defendant made and filed a statement and certificate of a proposed extension of its road from its easterly‧terminus in the village of Skaneateles, easterly along specified courses for a distance of about six miles to the village of Marcellus in the county of Onondaga.　This statement and certificate complied in all

essential particulars with section 90 of the Railroad Law which provides that " Any street surface railroad corporation, at any time proposing to extend its road or to construct branches thereof, may, from time to time, make and file in each of the offices in which its certificate of incorporation is filed, a statement of the names and description of the streets, roads, avenues, highways, and private property in or upon which it is proposed to construct, maintain or operate such extensions or branches.   Upon filing any such statement and upon complying with the conditions set forth in section 91 of the Railroad Law, (which relates to the consents of the local authorities and adjoining property owners in cities and villages), every such corporation shall have the power and privilege to construct, extend, operate and maintain such road, extensions or branches, upon and along the streets, avenues, roads, highways and private property named and described in its certificate of incorporation or in such statement."

The courts below have held that section 59 of the Railroad Law as it stood in 1901 had no application to proposed extensions of then existing street surface railroads, and that it was not necessary for the defendant to apply to the board of railroad commissioners for a certificate of public convenience and necessity for the extension of its road above referred to.   We concur in that construction of the statute.   The history and the language of section 59 very clearly indicate the legislative purpose behind its enactment.   When it first became a part of the Railroad Law in 1892 street surface railroads were expressly exempted from its provisions.   Thus it stood until 1895, when that exemption was removed.   In plain and unequivocal language it referred only to new railroads to be constructed by railroad corporations thereafter to be formed. In 1902 it was amended (Sec. 59a) by providing that " any street surface railroad company which proposes to extend its road beyond the limits of any city or incorporated village by a route which will be practically parallel with a street surface railroad already constructed and in operation shall first obtain the certificate of the Board of Railroad Commissioners that

public convenience and a necessity require the construction of such extension as provided in the case of a railroad corporation newly formed."

During the whole of the period from 1890, when the present Railroad Law was originally enacted, down to 1902, when section 59 was so amended as to bring proposed extensions of street surface railroads within the rule requiring the certificate of the board of railroad commissioners as to public convenience and necessity, section 90 has also been a part of the same law, and, although amended in 1893 and again in 1895, its substance has remained unchanged and it has always dealt exclusively with extensions and branches of street surface railroads. Thus we see that in 1890, when newly projected street surface railroads were concededly exempted from the changed policy of the state towards its steam railroads, as manifested in section 59 of the Railroad Law, the statutory provision (Sec. 90) for extensions of street surface railroads was in effect the same as in 1895 when new street surface railroads were placed upon the same footing as new steam railroads, and this was the condition of the statute down to 1902 when section 59 was amended as above stated.

The reasons for this difference in the earlier legislative treatment of the two kinds of railroads are obvious. Under the law as it stood prior to 1890 the requisite number of persons with sufficient capital could organize a railroad corporation and construct a railroad at any time and over any route they might choose. In the formative period of our state this was doubtless a most beneficent policy and contributed very materially to the development of our commerce and resources. Experience, however, demonstrated that railroad enterprises are not exceptions to the ordinary trade laws of supply and demand. Ill-advised and speculative railroad enterprises soon emphasized the necessity of protecting, not only existing railroad corporations against destructive competition, but the investing public against the disastrous consequences of indiscriminate and unrestricted railroad schemes backed by alluring but impracticable promise of gain. These were the con-

6

ditions which brought about the enactment of section 59 as part of the Railroad Law. The reasons for then exempting street surface railroads from its operations are equally apparent. At that time street surface railroads were operated by horse power, chiefly in the larger cities, and they were comparatively few in number. With the advent of electricity as a motive power new conditions were created. Not only was urban traffic greatly augmented, but interurban street surface railroads were projected on every hand, until the history of steam railroads found its counterpart in this new outlet for corporate enterprise and capital. In 1895 the legislature again interposed, this time in favor of existing street surface railroads and the investing public, by striking out of section 59 the exemption in favor of street surface railroads, thus placing all railroads of every kind thereafter to be projected upon precisely the same footing. That this amendment of section 59 was not quite far reaching enough has been made evident by later developments and legislation. After the legislation of 1895, section 90 of the Railroad Law still gave practically unlimited power to extend existing street surface railroads. Under this power long interurban lines could be constructed by means of successive extensions, and existing lines could be paralleled by the same methods. To remedy this new phase of an old evil, section 59a was enacted in 1902 and, as the law now stands, no street surface railroad corporation can extend its road beyond the limits of any incorporated city or village, if the effect of such extension will be to practically parallel any existing street surface railroad, without first obtaining from the board of railroad commissioners a certificate that public convenience and a necessity require such extension.

The construction of sections 59 and 90 of the Railroad Law, supported by their language and history, is reinforced by several incidental considerations. While it is true that these sections must be read together, it is equally true that such a reading is useful only so far as the two sections relate to precisely the same subject. Originally section 59 had reference only

to steam railroads, and section 90 has always dealt exclusively with street surface railroads. The Railroad Law has never permitted the extensions of steam railroads, while it has always provided for extensions of street surface railroads. The same legislative policy which in 1890 applied the provisions of original section 59 to steam railroads, excluded street surface railroads from its operation and, as that section related only to newly projected railroads, it is clear that the mere excision in 1895 of the exemption in favor of street surface railroads had no other effect than to place the latter upon exactly the same footing with the former. Sections 59 and 90 were, therefore, entirely independent of each other until 1902, when the legislature again announced a change of policy, not as to railroads generally, but only as to extensions of street surface railroads as expressed in section 59a, which for the first time brought sections 59 and 90 into relations with each other. All this is supplemented by the practical construction that has been given to these sections by the board of railroad commissioners and by the legislature. The former, in its annual reports of 1897, 1898 and 1899, very pointedly called attention to the need of amendatory legislation in respect of street surface railroad extensions; and the latter, in 1902, adopted the recommendations therein made by the enactment of section 59a. Much might be said as to the far-reaching effect of this practical construction and the legal weight which should be given to it, but since it is in perfect accord with our own view of the statute we deem it unnecessary to further extend the discussion.

The judgment should be affirmed, with costs.

PARKER, Ch. J., O'BRIEN, MARTIN and VANN, JJ., concur; GRAY, J., not sitting; BARTLETT, J., taking no part.

Judgment affirmed.