SYRACUSE, L. S. & N. R. CO. v. CARRIER et al.

(Supreme Court, Appellate Division, Fourth Department.   March 6, 1912.)

1. EMINENT DOMAIN (§ 186*)—PROCEEDINGS—CONDITION PRECEDENT.

Where a street surface railway corporation owning and operating an interurban railroad attempted to condemn land for a transmission line of electricity so as to avoid running high tension wires through a town, the filing of maps and profiles of the line with the Secretary of State is a condition precedent to condemnation, provided the transmission line be regarded as an extension of the railroad.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 500–504; Dec. Dig. § 186.*]

2. STREET RAILROADS (§ 59*)—MORTGAGE FORECLOSURE—CERTIFICATE OF CONVENIENCE.

A corporation  purchasing property of a street railroad company at mortgage foreclosure sale needs no certificate of public convenience and necessity from the Board of Railroad Commissioners to enable it to operate the mortgaged railroad.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 59.*]

3. STREET RAILROADS (§ 9*)—EXTENSION—CONSENT OF BOARD OF RAILROAD COMMISSIONERS.

Prior to the enactment of Public Service Commissions Law (Laws 1907, c. 429), a street surface railway company, in extending its line, was not bound by Railroad Law (Laws 1890, c. 565) § 59a, as added by Laws 1898, c. 643, and amended by Laws 1902, c. 226, to obtain the consent of Board of Railroad Commissioners, unless the road was practically parallel with one already constructed and in operation, but, after the passage of Public Service Commissions Law, such consent became under section 53 a condition precedent to an extension.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 11–14; Dec. Dig. § 9.*]

4. EMINENT DOMAIN (§ 10*)—PROCEEDINGS—AUTHORITY.

A street surface railway company cannot condemn land for its corporate needs, unless such right is given by statute, and the authority given by the statute applies exactly to the condemnation sought to be made.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 35–48; Dec. Dig. § 10.*]

5. EMINENT DOMAIN (§ 35*).

Where a street surface railway company extends its line through a town, it is under Railroad Law (Laws 1890, c. 565) § 4, subd. 2, as amended by Laws 1892, c. 676, and section 7, as amended by Laws 1892, c. 676, and Laws 1905, c. 727, authorizing it to condemn land necessary for the construction, maintenance and accommodation of the road, and for such additions, betterments, and facilities as may be necessary for the better management, maintenance, or operation, authorized to condemn land for a transmission line, so as to enable it to transmit its high-tension electric current around, instead of through, the streets of the town.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 80; Dec. Dig. § 35.*]

6. EMINENT DOMAIN (§ 169*)—PROCEEDINGS—CONDITIONS PRECEDENT.

Where a street surface railroad company which sought to condemn land for a transmission line of its high-tension electric current so as to avoid carrying it through the streets of a town was the owner of the fee of two highways over which the line had to pass, the consent of the local authorities to cross those two highways was not a condition preced-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ent to the condemnation of other land necessary for the construction of the line; the line not being an extension.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 461; Dec. Dig. § 169.*]

**7. EMINENT DOMAIN (§ 171*)—PROCEEDINGS—DEFENSES.**

Where a transmission line for high-tension electric wires was necessary for the proper operation of a street surface railway company which owned and operated an interurban line, it is no defense, in condemnation proceedings for land to be used for the line, to set up that the railroad company intends to sell electricity from such lines, for such sales, if for purposes foreign to those for which the land is condemned, may be restrained.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 468, 469; Dec. Dig. § 171.*]

Appeal from Special Term, Onondaga County.

Condemnation by the Syracuse, Lake Shore & Northern Railroad Company against Lizzie L. Carrier and others, impleaded with the Fulton Savings Bank. From a judgment for plaintiff, the first-named defendants appeal. Affirmed.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

Louis L. Waters and King, Waters & Page, for appellants.
William Nottingham, for respondent.

ROBSON, J. Plaintiff seeks in this proceeding to acquire for the purpose of constructing and maintaining thereon a double line of poles supporting wires and appurtenances for the overhead transmission of electric current at a high tension certain lands, of which, it alleged in its petition, the defendants were the owners. It is a street surface railway corporation, owning and operating an interurban railroad, built on private right of way the whole distance except in villages and cities, where portions of the streets are used. The road is operated by electricity, and extends from the city of Syracuse to and through the village of Phœnix. The premises sought to be acquired in this proceeding are not, nor are they sought to be, used as a part of its way for trackage, or construction other than the transmission line. The course of this transmission line diverges from the line of plaintiff's roadbed for its tracks at a point some distance south of the premises in question, and does not again coincide with it until a point a considerable distance north thereof is reached. The purpose of this divergence is to avoid, carrying the high-tension wires through the village of Phœnix as would be necessary if they followed the trackage location at this part of the route. Plaintiff by agreement with the several owners thereof acquired the other lands necessary for this transmission line; but was unable to agree with the owners of the strip in question for its purchase, and these proceedings for condemnation were instituted.

Plaintiff's certificate of incorporation was duly filed and recorded in September, 1905, and states that it is to form a corporation for the purpose of building, maintaining, and operating a railroad, and for the purpose of maintaining and operating a railroad already built. The kind of road to be built is, as stated, a street surface railroad to be

operated by horse power, cable, or electricity, and is to be built, maintained, and operated from Syracuse to Baldwinsville, in the county of Onondaga, which places will be its termini. Prior to plaintiff's incorporation, a corporation, named Onondaga Lake Railroad Company, had built a part of this line from Syracuse northerly to Long Branch on Onondaga Lake, and had obtained from the Board of Railroad Commissioners in November, 1896, a certificate of public convenience and necessity under section 59 of the railroad law (Laws 1890, c. 565), as added by Laws 1892, c. 676, and amended by Laws 1895, c. 545, as it was at that date. Afterwards this line was duly extended to Baldwinsville; and the name of the corporation was changed to Syracuse, Lakeside & Baldwinsville Railway in 1898. The property and franchises of the last-named corporation were sold upon mortgage foreclosure, and the same were transferred by the purchaser at such sale to plaintiff, which had been organized for the purpose of taking over the property.

[1] Thereafter in June, 1906, plaintiff executed and caused to be filed and recorded a certificate of extension pursuant to section 90 of the railroad law, as amended by Laws 1892, c. 676, Laws 1893, c. 434, and Laws 1895, c. 933, and pursuant to section 6 of that law, as amended by Laws 1892, c. 676, made and filed a map and profile of such extension. Neither the certificate of extension nor the map and profile thereof contained any description of, or direct reference to, the location of this transmission line, nor was any notice of the proposed extension of the railroad then given to the owners of the premises in question. The construction of the roadbed and tracks, as extended, had apparently proceeded to practical completion before plaintiff made and filed in the office of the clerk of the county of Onondaga the map and profile of the proposed transmission line, which was done October 29, 1908. This map and profile were never at any time filed in the office of the Secretary of State. This, among others hereinafter referred to, was a necessary step, provided the transmission line is to be regarded as itself an extension of the railroad. Notice of filing and that the route designated thereby passed over premises occupied by them was thereafter served on the defendant owners. Nothing was done by them to secure a change of the route proposed. That plaintiff's proceedings for the extension of its line of tracks and right of way therefor from Baldwinsville to and through the village of Phœnix were regular in form and sufficient for that purpose I do not understand to be now questioned by appellants.

[2] It required no certificate of public convenience and necessity from the Board of Railroad Commissioners to enable it to take over and operate the railroad constructed and formerly operated by the Syracuse, Lakeside & Baldwinsville Railway, title to which it had acquired as transferee of the purchaser at the foreclosure sale. People ex rel. Third Ave. R. R. Co. v. Public Service Commission, 203 N. Y. 299, 96 N. E. 1011.

[3] At the time it took the proceedings to extend its road from Baldwinsville the Public Service Commissions Law had not been passed, and the consent of the Board of Railroad Commissioners to such extension was not required; for the proposed extension was not

to "be practically parallel with a street surface railroad already constructed and in operation," in which case only did the statute then in force (section 59a of the Railroad Law, as added by Laws 1898, c. 643, and amended by Laws 1902, c. 226) require that such consent be first obtained. New York Central & Hudson River Railroad Co. v. Auburn Interurban Electric Railroad Co., 178 N. Y. 75, 70 N. E. 117. But, if the transmission line is to be regarded as an extension of the railroad, then, since the proceedings therein were begun after the enactment of the Public Service Commissions Law, concededly the permission and approval of the proper commission were necessary before beginning the proposed extension. Public Service Commissions Law, § 53; chapter 429, Laws of 1907. Therefore, since power is not given to condemn lands for the purpose of any extension of an existing road unless such extension is authorized by proceedings taken pursuant to some statute, plaintiff would for that reason alone not be in a position to maintain this proceeding. Matter of the Application of the Greenwich & Johnsonville Ry. Co. v. Greenwich & Schuylerville Elec. R. R., 172 N. Y. 462, 65 N. E. 278.

[4] But it does not seem that the construction of this transmission line can properly be regarded as an extension of plaintiff's railroad. If it is not to be considered as an extension, then plaintiff has no authority to condemn lands therefor, unless such right is given it by statute to provide for other corporate needs; and such statutory "authority must be seen to apply exactly to the case stated." Erie Railroad Co. v. Steward, 170 N. Y. 172, 63 N. E. 118; Matter of Greenwich & Johnsonville Ry. Co. v. Greenwich & Schuylerville Elec. R. R., supra.

[5] The Railroad Law as it existed at the time this proceeding was begun gave plaintiff authority to acquire by condemnation real estate necessary for "the construction, maintenance and accommodation" of its railroad "in the manner provided by law." Subdivision 2, § 4, of the Railroad Law, as amended by Laws 1892, c. 676. By section 7 of the same law, as amended by Laws 1892, c. 676, and Laws 1905, c. 727, it was authorized in the same manner to acquire for use upon or in connection with its railroad "such additions, betterments and facilities as may be necessary or convenient for the better management, maintenance or operation" of its railroad. Transmission of electricity over the length of its road is concededly necessary, if the road is to be operated by that power. The overhead system plaintiff employs for that purpose requires for the reasonably economical use of the current its transmission at a high voltage by means of exposed wires. It appears without dispute that the custom in the construction of electric roads is to avoid whenever it is possible placing the high-tension wires for any considerable distance in the streets of a city or village. One apparent and sufficient reason for this, as the evidence shows, is that in case of fire or other accident resulting in bringing the line down to the street or in case of an accidental contact with the line by telephone or telegraph wires the lives of persons in the street, or elsewhere who might come in contact with such a wire, would be menaced, and serious, if not fatal, consequences ensue. There is also an added danger in repair of telephone and telegraph

lines near such a line; and even in the repair of the line itself, where telephone, or telegraph, wires are under it, the possibility that the men engaged in that service will accidentally do something which will bring it in contact with the wires beneath, and "thereby cause loss of life and property to people connected with the telephone lines either at the telephone instruments or stations," cannot be certainly guarded against. The danger from these high-tension wires when strung in places where the possibility of contact with other wires is avoided is reduced to a minimum. The construction and operation of a railroad it will be conceded should be after such manner as to provide for the safety, so far as posible, of all persons likely to be endangered thereby. The construction of this transmission line so as to avoid the village of Phœnix is the safer, and is also the customary, construction, at such points. I think, therefore, it may properly be regarded as an "addition," an "accommodation," or a "facility" for plaintiff's railroad within the meaning of those terms as used in the statute above referred to. The following statement of Vann, J., in Matter of New York, Lackawanna & Western R. R. Co. v. Scheu, 33 Hun, 148, 154, affirmed 98 N. Y. 664, seems to be apt descriptively in the present investigation:

"The purpose of its incorporation is to build and operate a railroad for public use. The operation of the road is as essential as its construction. The land in question, therefore, is needed for one of the legitimate purposes of the road; and, when the necessity exists and a reasonable discretion is used, the courts will not interfere, even if the exercise of the power to take lands under the statute is attended with extreme inconvenience and hardship to individuals."

See, also, Matter of New York & Harlem R. R. Co. v. Kip, 46 N. Y. 546, 7 Am. Rep. 385; Matter of New York Central & Hudson River R. R. Co. v. Met. Gaslight Co., 63 N. Y. 326; Matter of New York Central & Hudson River Railroad Co., 77 N. Y. 248.

[6] Appellants' counsel urges that, it appearing that the proposed transmission line crosses two highways, plaintiff must as a necessary condition precedent to its right to begin this proceeding have obtained the consent of the local authorities to cross these highways with its line. In support of this position Matter of Rochester Elec. R. R. Co., 123 N. Y. 351, 25 N. E. 381, and Colonial City Traction Co. v. Kingston City R. R. Co., 153 N. Y. 540, 47 N. E. 810, are cited. These cases are apparent authorities that a corporation intending to engage in the construction of a street surface railway, or an extension thereof, must obtain the consent of the proper local authorities to use and occupy streets, or highways, for the construction of the road, or extension thereof, before it is in a position to pursue condemnation proceedings. But if I am correct in the conclusion that plaintiff's transmission line is not an extension of its road, but is an incidental necessity to its operation, then the provisions of the Railroad Law upon which the decisions above referred to are based do not in terms apply. It may be that such consent must be obtained (and the record shows that it was in fact obtained) before plaintiff could legally cross the highways in question with its transmission line. But the land sought in this proceeding did not adjoin these highways at any

point. Plaintiff was the owner of the fee of so much of the highways as it sought to occupy with its line, and under the circumstances it would seem the procurement of such consent was not necessarily required to be had before plaintiff could begin this proceeding. Matter of New York Central & Hudson River Railroad Co., 77 N. Y. 248; Matter of People's R. R. Co., 112 N. Y. 578, 584, 20 N. E. 367.

[7] Appellants also insist that plaintiff purposes to use this transmission line to supply electricity for the use of others not in any way connected with the railroad or with its operation. It appears from the proof that the transmission line as projected and constructed is not only proper, but is necessary, for the operation of the railroad. If plaintiff shall hereafter use it for purposes so foreign to those to serve which it was by law authorized to prosecute this proceeding, and injury to the rights of the defendants, or their successors in interest, should result therefrom, doubtless such unauthorized use would be restrained if a proper case was presented.

The other objections urged by appellants' counsel have all been considered; but none of them appear to be of sufficient importance to warrant interference with the judgment and orders appealed from.

The judgment and orders should be affirmed, with costs. All concurred.