(161 App. Div. 329)

NEW YORK CENT. & H. R. R. CO. v. ALBANY STEAM TRAP CO. et al.

(Supreme Court, Appellate Division, Third Department.   March 13, 1914.)

1. EMINENT DOMAIN (§ 66*)—RAILROAD RIGHT OF WAY—NECESSITY—DISCRE-
   TION OF COMPANY.
   The courts will not attempt to control the reasonable exercise of a rail-
   road company's discretion in deciding what land is necessary to enable it
   to render its services.
   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 165–
   167;  Dec. Dig. § 66.*]

2. EMINENT DOMAIN (§ 56*)—SUFFICIENCY OF EVIDENCE—NECESSITY.
   In a railroad's proceeding to condemn a strip adjoining its right of
   way, evidence *held* sufficient to show a necessity for the taking.
   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 147–
   160;  Dec. Dig. § 56.*]

3. EMINENT DOMAIN (§ 149*)—SUFFICIENCY OF EVIDENCE—ADEQUATE COMPEN-
   SATION.
   On the evidence in a proceeding to condemn, a strip about 36 feet in
   width and 190 feet adjoining a railroad right of way was taken, including
   about one-third of the end of a building in which heavy machinery was lo-
   cated.  *Held*, that an award of $13,600 was adequate.
   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 327–
   331, 401;  Dec. Dig. § 149.*]

4. EMINENT DOMAIN (§ 133*)—COMPENSATION—PERSONAL PROPERTY.
   In such case, the heavy machinery located in part of the building taken,
   carried on defendant's inventory as personal property, and which was
   held in place by screws and could be moved without injury to the realty,
   was properly valued as personal property.
   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 358–
   361½;  Dec. Dig. § 133.*]

Appeal from Special Term, Albany County.

Condemnation proceeding by the New York Central & Hudson
River Railroad Company against the Albany Steam Trap Company
and others.   From a final order and from an interlocutory judgment
confirming the report of the referee, etc., defendant Albany Steam
Trap Company appeals.   Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOW-
ARD, and WOODWARD, JJ.

Holmes & Bryan, of Troy, for appellant.
Visscher, Whalen & Austin, of Albany, for respondent.

LYON, J.   The real property sought to be condemned is situated
along the west side of the respondent's right of way between the
Broadway viaduct and Van Woert streets in the city of Albany.   One
parcel belonged to the Albany Steam Trap Company, and the other to
Jacob W. Bloom.   The latter evidently accepted the award, as the
Albany Steam Trap Company alone appeals.   The trial of the issues
had before a referee resulted in favor of the respondent; the referee
deciding that the respondent had established a necessity for the ac-
quisition for the respondent's corporate purposes of the property
sought to be acquired, and that it should have judgment against both

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

landowners, entitling it to take and hold the property upon making compensation therefor. An interlocutory judgment was thereupon granted, overruling appellant's exceptions, confirming the report of the referee, awarding condemnation, and appointing three commissioners of appraisal. The commissioners awarded the appellant, the Albany Steam Trap Company, $13,600. The objections and exceptions filed by the appellant to the report of the commissioners were overruled and the report in all things confirmed. This appeal was thereupon taken from the final order; the appellant specifying in its notice of appeal its intention to bring up for review the interlocutory judgment.

Of the many questions raised by the appellant, the only ones calling for consideration at this time are as to the necessity of the respondent acquiring so wide a strip of the appellant's property and the adequacy of the award. As to the first of these propositions it appears that the respondent operates a railroad system extending from the city of New York to the city of Buffalo, and that daily about 60 passenger and from 75 to 100 freight train movements are made over respondent's right of way opposite the property of appellant, and that the width of the right of way at that place is only about 49 feet, and that over this space are laid four main tracks, two for through passenger and two for through freight traffic, and that this narrow space does not permit of sufficient clearance being had between the tracks for the safe operation of trains. The distance from the center of the westerly track to the center of the track next east (track 2) is 11.2 feet; from the center of track 2 to the center of track 3 is 10.9 feet; and from the center of track 3 to the center of track 4 is 11 feet. Respondent's engineers testified that the clearances required by the regular standard, and which it is apparent that the appellant requires for the safe and proper operation of its railroad, are 13 feet between the centers of tracks 1 and 2; 17 feet between the centers of tracks 2 and 3 (which is the space separating the passenger and freight tracks), and 13 feet between the centers of tracks 3 and 4. One of respondent's engineers testified that he knew of no other point upon respondent's railroad where the clearance was so small, and that the place has had to be carefully watched in order to avoid danger to the men operating trains, and that owing to increased dimensions of cars, some of which are 10½ feet in width, it has frequently been necessary to make special examinations to determine whether it was safe to permit cars to pass through this space, and by reason of the width of certain cars to divert them to another route.

In addition to the requirement for safe and proper clearances, it appears that as the tracks leave the Broadway viaduct, which is about 250 feet southerly from appellant's property, they curve to the right for about 225 feet, then run upon a straight line about 300 feet, and then curve to the left, crossing Van Woert and North Pearl streets at grade and near the intersection of said streets. These curves make the operation of respondent's road more expensive, also make it impossible, because of the buildings erected along respondent's right of way, to see up and down the tracks a sufficient distance for the safe

operation of trains. The westerly rail of the westerly track is 3 feet 7 inches at appellant's northerly line and 3 feet 9 inches at appellant's southerly line, from appellant's fence, and about 9 feet 8 inches from the northeasterly corner of its building. Standing at the northerly end of the Broadway viaduct in the center of track 2, a clear view of the tracks north of North Pearl street is obstructed by the appellant's main building. It is impossible to eliminate these curves upon the present right of way, and in order to do so and to obtain the standard clearances it will be necessary to move all the tracks westward, the westerly track being moved westerly at the Van Woert street crossing about 40 feet, and opposite appellant's property from 17 to 20 feet, which will give the respondent an approximately straight track for about 1,500 feet north of the Broadway viaduct. The present plans contemplate taking a strip of appellant's land about 35 feet wide measured at right angles to the division line between lands of the appellant and respondent.

Respondent's engineers testify that proper construction of the track bed, owing to the great weight of the trains which pass over it, requires the placing underneath the track of ballast from 18 to 24 inches in thickness, the shoulder of which shall be 9 feet from the center of the track; the construction of a ditch at least 3 feet wide outside that, to carry surface water and of sufficient depth to drain the subgrade; and sufficient land outside the ditch to provide the necessary slope to the ditch, taking into consideration the elevation of the adjoining lands. The construction which would appear to be required, owing to the cellar underneath the portion of appellant's building sought to be taken being of the unusual depth of 12 feet, would be the building of a retaining wall of sufficient height and thickness to retain the pressure of the earth upon the railroad side of the wall. This construction would also require the appropriation of a narrow strip of land outside the wall for use in constructing the wall. In either case all the land sought to be acquired would be necessary for the safe and proper construction and operation of defendant's railroad. It appears, also, that plans have been prepared by the city of Albany, and submitted to the Public Service Commission, contemplating the raising of the grade of respondent's railroad north of the Broadway viaduct, and the elimination of the Van Woert street crossing, and that the plans of respondent in connection with the acquisition of the real property of appellant have been made in conjunction with said plans for the elimination of said grade crossings.

[1, 2] The appellant contends that the condemnation is not in good faith and that the respondent does not intend to make the improvements alleged. This claim appears to be wholly unwarranted, as the necessity for the improvement is urgent, and the respondent has already acquired all the other lands needed for making it. The appellant also contends that the referee decided the question as to the quantity of land which the respondent might take under a misapprehension of the law; the appellant claiming that the referee's finding was based upon the law giving to the railroad company the right to determine that question for itself and that such determination was conclusive. I

do not so construe the finding of the referee, but rather that he held that the respondent had the right to determine what betterments were necessary for its service, and that the court could not supervise and control the reasonable and lawful exercise of that discretion in adopting plans for the consummation of its purpose. The conclusion of the referee is amply supported by the authorities:

"To a large extent the company is to determine, under the delegation of power to it by the state, the extent of its wants, and to fix upon the location of lands, subject to the qualification that the purposes for which the land is to be taken are strictly within its charter. Where a reasonable necessity is shown, a reasonable discretion must be exercised, and the courts will not interfere to control that discretion, unless it will result in great injury or is influenced by some improper motive." In re New York Cent. & H. R. R. R. Co. v. M. G. L. Co., 63 N. Y. 326, 331.

"Where the necessity exists, and a reasonable discretion is exercised, the courts will not interfere." Matter of New York Cent. & H. R. R. R. Co., 77 N. Y. 248.

"When the necessity exists and a reasonable discretion is used, the courts will not interfere, even if the exercise of the power to take lands under the statute is attended with extreme inconvenience and hardship to individuals." Matter of New York, L. & W. R. R. Co., 33 Hun, 148, affirmed 98 N. Y. 664; Syracuse, Lake Shore & Northern R. R. Co. v. Carrier, 149 App. Div. 411, 416, 134 N. Y. Supp. 791.

The evidence bears out the decision of the referee, which was confirmed by the court upon granting the order appointing commissioners of appraisal, to the effect that the respondent had established a necessity for the acquisition of the property sought to be acquired from the appellant herein for the respondent's corporate purposes.

[3, 4] As to the adequacy of the award of $13,600: The appellant's property is about 36½ feet wide and runs from respondent's right of way to North Pearl street, a distance of about 190 feet. Situated nearly at the easterly end of the lot is appellant's main building, built of brick, 36½ feet wide, 78½ feet long, with the east half three stories high and the west half four stories high, with a cellar under all. The portion sought to be condemned included about one-third of the easterly end of this building, and is 37 feet long on the southerly line and 40.3 feet on the northerly line. In this building is located heavy machinery used by the appellant in its business. Westerly of this building is the one-story foundry, and westerly of that and fronting on North Pearl street, the office building. The property was purchased by the appellant in 1906 for $4,500. The appellant expended in repairing the office and main building and in erecting the foundry about $8,400, making the cost of the property to appellant about $12,-900. The property was carried by appellant upon its inventory at $13,-644.54, or less than $50 more than has been awarded appellant for the piece to be taken by respondent. Upon the hearing before the commissioners the appellant claimed that a large portion of its machinery was so affixed to the building as to be a part of the real estate, and that the commissioners should make their award accordingly. It appears that the greater portion of the heavy machinery has been owned by the appellant for about 20 years, and has been twice moved as appellant changed its business location. The machinery has been carried upon appellant's inventory as personal property. It has been

fastened and held in place by screws, and can be moved without injury to the real estate. It was properly held by the commissioners to be personal property.

The appellant also claims that the finding of the referee that the respondent had been unable to agree with the appellant for the purchase of the strip of land, although it had made efforts so to do, was not warranted by the evidence. The proof was that, prior to the proceedings being instituted, respondent's agent had several conversations with appellant's president, who was the owner of a majority of the stock, regarding the purchase of the strip of land, exhibiting a map of the property desired, and was told that the company would not consider any proposition to sell a part, but would sell the whole of the premises for $35,000, and that he would make no price on a part. Later an offer to purchase was served upon the president of appellant, and later another offer was left at the office of appellant with the bookkeeper in charge, to which no response was made. I think the finding referred to was warranted, and that the award was ample. There are no exceptions calling for a reversal of the order appealed from.

The interlocutory judgment and final order should be affirmed. All concur.