[Civ. No. 5568. Second Appellate District, Division Two.—November 15, 1927.]

COUNTY OF LOS ANGELES, Respondent, v. SIGNAL REALTY CO. (a Corporation) et al., Appellants.

Hill, Morgan & Bledsoe, Hugh Gordon, Vincent Morgan and Benj. M. Stansbury for Appellants.

Everett W. Mattoon, County Counsel, and Leslie R. Tarr, Deputy County Counsel, for Respondent.

CRAIG, J.—The respondent filed suit in eminent domain for condemnation of five feet along the northerly boundary of certain real property of appellant Signal Realty Company, on the southerly side of Florence Avenue, extending easterly 160 feet from Long Beach Boulevard, in the city of Los Angeles, for the purpose of widening Florence Avenue. Appellant Realty Company was also the owner of a two-story brick and terra cotta building, which extended 152 feet easterly on Florence Avenue and 122 feet southerly on Long Beach Boulevard. Appellant Culver occupied a portion of said building, including the corner, in which he maintained a drug-store and storeroom, under a five-year lease with an option of renewal for a like term, which said lease had been in effect for a period of two years. Referees appointed by the court reported that the appellant Realty Company was entitled to damages for the value of land to be taken in the sum of $6,023, and for reconstruction of the improvements by use of old material, $24,483, or a total of $30,506. Appellant Culver was awarded nothing. Exceptions to the referees' report having been filed, the court heard evidence and concluded that the Realty Company was entitled to reconstruct its building with new material, whereupon the award for reconstruction was increased $8,200, making a total compensation of $38,706. As so modified, the report was approved.

Appellants base their appeal upon alleged prejudicial errors in law claimed to have been committed by the trial court in striking out certain evidence, and upon an asserted insufficiency of evidence, as a result thereof, to sustain said award which, it is insisted, would have been materially higher had the stricken testimony been allowed to stand. No question is raised as to compensation for the property taken.

It appears that an expert whose qualifications were stipulated by the parties, testifying for the plaintiff, swore that

considering the life of the building at considerably more than that contended for by the defendant corporation, and having allowed the market value of the five feet of land, and of the building, together with the expense of tearing down and reconstructing the building for continued use at the same rental per square foot, and deducting the rents which the Realty Company would necessarily be compelled to concede to tenants, he arrived at the amount of compensation fixed by the referees' report. During cross-examination of this witness on behalf of the defendants he testified that in valuing business property with business upon it, it is usual to inquire into the rentals and determine what the property will produce as income property from known rentals, and that this was done in the instant case. The witness Seelig, president of the defendant corporation, had previously testified that he valued the building and the land at $300,000; he said, "In my opinion the amount of that damage will be 22% of our *income.* . . . I figured 22 per cent of the *cost of the land and the building,* which is $66,000. . . . I absolutely feel sure, in fact I know I am going to lose $395 per month, which is $4,740 yearly. *This represents gross rentals.* . . . The figure which I am being paid for the 5 feet of the building is not included in the $66,000 figure, and I am being paid for the reconstruction of the 5 feet of the building that is being damaged, and that figure is not in the $66,000 either. The $66,000 is severance damages. . . . I have seen the figures in the referees' report. The value of the land taken is $6,023, and the value of the improvements is $24,483, less about $1,500 for remodeling, making a total for the land and improvements about $29,000, which, added to $66,000, gives a total of $95,000 compensation. I believe that after the severance of the 5 feet from the land and building that if we went out in the market to sell that building, based on the new rentals, we could not get much in excess of $200,000 for it, whereas now we think we can get $300,000 for the land and building. . . . In our agreement with Mr. Culver, the lessee of the drug-store, the Signal Realty Company is to receive all of the damage which may be done to the leasehold interest, in return for which we have reached an agreement by which we will reduce his rental." Like reductions in rents were made to other tenants. This witness further testified that, assuming the necessary recon-

struction would consume a period of four months, he had allowed his tenants a total reduction in rent amounting to $2,150 for loss of business. Appellant Culver testified that the condemnation of five feet of his store space would also take permanent fixtures valued at $1,632, and that in order to resume business he would be compelled to relocate certain other fixtures at a cost of $4,372.50, for both of which items he demanded compensation.

All of this testimony of the two witnesses last mentioned was admitted over objections of the plaintiff, upon the grounds that Seelig's testimony was remote and speculative, and was predicated upon loss of business; and that the evidence given by appellant Culver related to movable fixtures, and to the relocation of fixtures not taken, neither of which was a compensable item. At the conclusion of the hearing upon the referees' report, counsel for respondent moved that all of the testimony of the witness Seelig pertaining to the question of rental for the ensuing thirty-three years be stricken out, at which time it was agreed by the parties that the witness based his estimated loss of $66,000 upon the fact that the property would be rented for a certain figure for the next thirty-three years. Respondent also moved that the testimony of appellant Culver as to the value of fixtures, consisting of counters, shelving, showcases, signs, etc., located in the five-foot strip, and pertaining to the necessity for removal of fixtures and relocation of fixtures, and the cost thereof, be stricken out. The motions to strike were submitted upon briefs, and thereafter each of the motions was granted, and the evidence offered by appellants upon the foregoing elements of damage was eliminated.

Appellant Realty Company contends that in striking out the testimony which was introduced in its behalf in this regard "and in awarding the Signal Realty Company nothing for severance damage," there remained nothing but the testimony of the respondent's witnesses upon which to base a valuation. It is insisted by respondent that the stricken testimony amounted to nothing more than an attempted showing of loss of income, after proper deductions had already been made by the referees for rents which the appellant company would cease to receive upon severance of five feet of the building. As we have heretofore observed from quotations of Seelig's testimony, he maintained that in

addition to about $29,000 which the referees allowed him, he should have $66,000 which he estimated as twenty-two per cent of the cost of the land and the building, and almost in the same breath he stated that this latter amount was twenty-two per cent of the income, and that it should be added to the amounts allowed for land taken, improvements, tearing down, and reconstruction of the building.

■ We think the testimony was properly stricken, because it consisted of the witness' speculation and conjecture only.

■ Of course, in so far as severance damages are concerned, the purpose of the inquiry is to ascertain the damage to remaining property which is measured by its loss in market value. Any witness for whose testimony a proper foundation has been laid may give his opinion upon this issue. The scope of investigation is largely a matter within the discretion of the trial court. It would not be an abuse of such discretion to permit the witness to state existing facts, such as location and surroundings of the property. (*San Diego Land & T. Co.* v. *Neale,* 88 Cal. 50 [11 L. R. A. 604, 25 Pac. 977].) ■ However, questions concerning collateral subjects touching the property which one about to buy would feel inclined to ask are properly propounded upon cross-examination only or upon redirect examination where they have been entered into during cross-examination. (*Little Rock Junction Ry.* v. *Woodruff,* 49 Ark. 381 [4 Am. St. Rep. 51, 5 S. W. 792], cited with approval in *San Diego Land & T. Co.* v. *Neale, supra.*) But in any event, even such inquiry into collateral issues should be limited to conditions capable of proof, and mere conjectural statements and opinions are not permissible. As we have mentioned, it was stipulated between the parties that the testimony of the witness Seelig that the severance damages sustained would amount to $66,000 was based upon his estimated loss of that amount in rentals during the next thirty-three years by reason of the loss of the land taken. In making this statement the witness was not relating a fact. He did not pretend to do more than tell the court what he believed would result, based upon his knowledge of the past. This was merely an estimate, and his testimony in that regard was only conjecture. It follows that the portion of the testimony of the witness Frisbie was properly stricken which was given on cross-examination based upon the assumed

premise that the statements of the witness Seelig which had been stricken was correct. Authorities cited by appellants to the rule that where a portion of a building is taken the measure of damages to the building is the difference between its value before, and the value of the remainder after, condemnation, and is determined by a consideration of its use, depreciation, reduction of income, etc., are not inconsistent with what has been said herein. These elements are proper to be considered, but they must be established if at all by competent evidence and not the mere fanciful guess of any witness as bearing upon severance damages. It is not so much the subject with which the witness Seelig's tetimony dealt that is objectionable, but it is its character as being speculative which rendered it incompetent and irrelevant.

A further reason for sustaining the trial court in striking out the evidence is that although an exception is made in favor of the owners to the general rule excluding opinion evidence of witnesses not shown to have a special knowledge concerning market value, that exception does not go beyond permitting the owner to state his idea as to the value of the property taken and of the loss to the remaining portion. We know of no instance, and are cited to none, in which an owner has been permitted to add to his testimony in that regard by opinion evidence upon collateral matters unless a foundation were first laid for his testimony in the same manner as that of any other witness by proof of his qualifications as an expert.

The only remaining point worthy of discussion is appellant Culver's contention that he should be compensated for removal and damage to or destruction of store fixtures in the portion of the building which was demolished. Again, in this instance, testimony bearing upon the value of the fixtures and the expense of removal and replacement was received over objections of the plaintiff. During Culver's examination he testified that in many respects he was compelled to purchase new fixtures, on account of the necessary re-arrangement following the severance of the front of his store. Thereafter, upon motion of the plaintiff, this evidence was stricken out, and such ruling is assigned as error. Appellant's authorities relate wholly to permanent fixtures which constitute improvements in the ordinary use of that

term, and we think they are not in point. Appellant's store fixtures consisted of screen doors, shelving, window display cases, signs, awnings, etc., much of which, it is said, were fastened to the building by nails, screws, and bolts. Testifying in his own behalf, however, this appellant said: "The property I have testified to is property I have paid for. It belongs to me, and I knew when I paid for it that I had a right to remove it at the termination of the lease." It cannot be doubted that such was the intention of the parties, and there is nothing in the record tending to indicate that the Realty Company claimed the right to ownership of its tenant's trade fixtures at any time. There is some evidence to the effect that even after severance there would remain more room than was actually utilized by Culver, and while he might prefer to remodel or replace certain fixtures following their removal, at considerable expense to himself, it remains that the plaintiff took no part of his property, and the cost of removal was not a compensable item. In *Jahnke* v. *Jahnke*, 81 Cal. App. 387 [253 Pac. 752], it was held that as a general rule the question as to whether articles are so affixed as to become a part of the realty is one of fact to be determined by the trial court upon the evidence presented, and that the intent of the parties is the controlling criterion. (Citing *Gosliner* v. *Briones*, 187 Cal. 557 [204 Pac. 19]; *Pennybecker* v. *McDougal*, 48 Cal. 160; *Miller* v. *Waddingham*, 91 Cal. 377 [13 L. R. A. 680, 27 Pac. 750]; *Hendy* v. *Dinkerhoff*, 57 Cal. 3 [40 Am. Rep. 107]; *Lavenson* v. *Standard Soap Co.*, 80 Cal. 245 [13 Am. St. Rep. 147, 22 Pac. 184]; *Jordan* v. *Myres*, 126 Cal. 565 [58 Pac. 1061]; *Western Union Tel. Co.* v. *Modesto Irr. Co.*, 149 Cal. 662 [9 Ann. Cas. 1190, 87 Pac. 190].) Here, as in *Jahnke* v. *Jahnke*, "the trial court found by implication at least that the articles of property involved were not affixed to the building so as to become a part thereof, and thereby constitute a part of the realty, and the findings of the court in this regard seem amply supported by the evidence." A case strikingly analogous to the instant one is *New York C. & H. R. R. Co.* v. *Albany S. T. Co.*, 161 App. Div. 329 [146 N. Y. Supp. 674], wherein it was held that evidence as to the value and cost of removal of personal property was properly excluded. So, too, in *Ranlet* v. *Concord R. R. Corp.*, 62 N. H. 561, compensation was demanded for coal

and wood bins and sheds constructed upon the realty, and it was there held that: ''The land covered by the plaintiff's lease was taken by the defendant in the legitimate exercise of the power of eminent domain. The measure of the plain-⋅ tiffs' damages was the market value of the unexpired lease, and the excluded evidence could furnish no aid in the determination of that question; (*Petition of Mt. Washington Road Co.*, 35 N. H. 134, 146 Coll. Const. Lim., 565; *Lawrence* v. *Boston*, 119 Mass. 126.) As the title to all property is held subject to the implied condition that it must be surrendered whenever the public interest requires it,⋅ the inconvenience and expense incident to the surrender of the possession are not elements to be considered in determining the damages to which the owner is entitled. A landowner is not entitled to the expense of removing personal property from the land taken. *Central Pacific R. R. Co.* v. *Pearson*, 35 Cal. 247.''

No error appearing, the judgment appealed from is affirmed.

Works, P. J., and Collier, J., *pro tem.*, concurred.