[L. A. No. 1357. In Bank.—February 1, 1906.]

ANNA M. EISENMAYER and N. P. EISENMAYER, her Husband, Appellants, v. CARL H. LEONARDT, Respondent.

CONTRACT TO ORGANIZE CORPORATION AND ISSUE STOCK — ACTION FOR BREACH—WANT OF BASIS FOR ALLEGED VALUE—SUPPORT OF FINDING FOR DEFENDANT.—In an action to recover damages for breach of a contract to organize a cement-manufacturing company, and to give to plaintiff one hundred shares of the stock thereof when organized, where the asserted value of the stock is based upon no facts, and is fanciful, unsubstantial, and imaginary, and cannot even be called speculative or prospective; and the court found that said stock, if issued, would have had no value that could be ascertained or determined, and there was uncontradicted evidence that it would have had no value, and that there was no available deposit of cement from which the manufacture thereof could have been successfully prosecuted, the finding is sufficiently supported, and judgment was properly rendered for the defendant.

ID.—OPINION OF WITNESS—FACTS NOT STATED.—The requested opinion of a witness as to the value of the stock, if issued, was properly disallowed, where no facts, real or hypothetical, were stated as the basis of an intelligent opinion, but the questions asked merely recited the provisions of the contract, and the witness was requested thereupon to give his opinion.

APPEAL from a judgment of the Superior Court of Los

Angeles County and from an order denying a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

A. C. Mouser, for Appellants.

Borden & Carhart, for Respondent.

McFARLAND, J.—This action is brought to recover damages from the defendants, Leonardt and Capitain, for their alleged failure to organize a cement-manufacturing company, and to give to the plaintiff Anna M. Eisenmayer one hundred shares of the stock of such company when organized, in compliance with a certain written contract between said Anna and said defendants, set out in the complaint. The plaintiff N. P. Eisenmayer is the husband of said plaintiff Anna. The defendant Capitain was not served with summons, and did not appear, and the action was prosecuted against the defendant Leonardt alone. The court made findings and rendered judgment for defendant, and appellants appeal from the judgment and from an order denying their motion for a new trial.

On the seventh day of December, 1896, there was pending in the superior court of San Diego County an action entitled "N. P. Eisenmayer v. Adolph A. Nuelle et al., No. 6,332," in which action the said Leonardt and Capitain (defendants herein) were defendants. The rights of the said Eisenmayer as plaintiff in said action had been assigned to the present plaintiff Anna, and she had control of the action. At that time the defendants herein were entertaining the project of organizing a company for the manufacture of cement out of certain deposits of rock and clay at a place called El Toro, and had issued a prospectus relating to the contemplated business. Under these circumstances the plaintiff Anna and the defendants Leonardt and Capitain, on said date—December 7, 1896—entered into the written contract out of which this litigation arises. The contract is quite long, and we will refer here only to those parts of it which are material to the consideration of this appeal. The said Anna is the party of the first part and the defendants the parties of the second part, and the first part of the contract is as follows: "That in consideration of the payment of $250.00 cash, by said second

parties to said first party, the receipt whereof is hereby acknowledged, and the further payment of $250.00 on or before June 7th 1897, by said second parties to said first party, and the issuance to said first party, and delivery to her, of one hundred shares of the par value of $100,00 per share, of fully paid up and non-assessable stock of El Toro Cement Manufacturing Company (or any other cement-manufacturing company organized by the said second parties in lieu of the said El Toro Cement Manufacturing Company) when organized, such cement company to be so organized and the said 100 shares of the said stock to be so issued and delivered to her as aforesaid on or before June 7th, 1899.'' It further provides that ''in consideration'' that the parties of the second part shall guarantee certain dividends on the stock to be issued, to the extent of five hundred dollars and ''in consideration'' that they should before August 9th, 1897, pay twenty-. five dollars costs in the said action of N. P. Eisenmayer *v.* Nuelle et al., and that the first party ''in consideration of all of the above and foregoing agreements on the part of the said second parties, and when the same have each and all been fully kept and performed on the part of said second parties, then, and not before, hereby agrees to cause said suit to be dismissed, and to forever waive and cancel all claims now existing against the defendants therein, and each of them, as set out in the amended complaint, filed therein.'' It is further provided ''that any failure on the part of said second parties to keep and perform, as herein agreed and provided, any and all of the covenants and agreements herein contained, on their part, shall authorize said first party to at once proceed with said suit, the same as if this agreement had never been made, and that nothing herein contained shall in any way affect the rights of said first parties in said action, or of said plaintiff therein; and further, that the said $250.00, so paid cash, and also all sums that may hereafter be paid as herein provided, in the event of the failure of the said second parties to faithfully keep and perform each and all of the above agreements on their part, shall be forever forfeited by said second parties to the said first party, . . . and such forfeiture or forfeitures shall be regarded and treated as penalties for such failure or failures on the part of said second parties to so faithfully keep and perform the conditions

and agreements herein contained on their part, when and as herein agreed and provided.''

It is averred in the complaint that the defendants wholly failed to give plaintiff one hundred shares, or any part thereof, of the cement-manufacturing company to be organized, and have failed and refused to organize any cement-manufacturing company whatever. It is further averred that if such one hundred shares had been issued and delivered to plaintiff, they would ''now be of the value of not less than $12,000,'' and that therefore plaintiffs herein have been damaged in the sum of twelve thousand dollars. It is to be observed that the entire claim of plaintiffs for damages rests upon the averment that if the stock had been issued it would have been worth twelve thousand dollars, or at least that it would have had some substantial value. The court found that the contract was made as alleged; that defendant had paid plaintiff the sum of two hundred and fifty dollars, payable at date of the contract, and the two hundred and fifty dollars due on June 7, 1897; that defendants had not organized a cement-manufacturing company, and had not issued to plaintiff any shares thereof; that ''it is not true that said 100 shares of stock, if the same had been issued by the defendants and delivered unto the said plaintiff as recited in said writing, would have been of the value of $12,000, or of any other value; and the court finds upon the evidence before it that the value of said stock if the same had been issued and delivered cannot be ascertained and determined,'' and also that ''it is not true that the said plaintiff has been damaged by the failure of defendants to issue and deliver the said stock as aforesaid, in the sum of $12,000, or in any other sum which can be ascertained or determined.'' The court also found, as a conclusion of law, ''that the provision in said writing relating to the retention by the said plaintiff of the cash payments aforesaid, and the prosecution by her of said action pending in the superior court of San Diego County, affords the only measure of damages for the failure of the defendants to issue and deliver said stock unto plaintiff.''

Respondent contends, with some plausibility, that the contract merely gives the parties of the second part an option to have the said pending action dismissed by organizing a cement company and issuing stock to plaintiff, and that their failure

to do so merely resulted in their forfeiture of the money paid by them to plaintiff, with leave to the latter to resume the prosecution of said action, and that the contract does not contain any positive covenants on the part of the defendants to organize such company or issue such stock; but as the court below did not consider this question we will not discuss it. Respondent also contends that the court was right in finding that the retention by plaintiff of the cash payments and the right to prosecute the said pending action afford the only measure of damages for the failure to organize a company and issue stock to plaintiff—being, in substance, liquidated damages; but while there is much force in this contention, we do not deem it necessary to definitely determine it, because, in our opinion, the court correctly found that if the defendants had issued the stock as recited in the contract, it would not have been of the value of twelve thousand dollars, or of any other value, and that, upon the evidence, the value of the stock, if it had been issued, cannot be ascertained or determined. In the first place, this asserted value of stock which was never in existence is not based on any facts whatever. One can hardly conceive of anything more unsubstantial and imaginary. This fanciful value cannot even be called speculative or prospective, for there is nothing upon which to figure any speculative or prospective profits. The case is entirely different from that of *Shoemaker* v. *Acker,* 116 Cal. 239, [48 Pac. 62], cited by appellants. In that case there was the substantial fact of a growing orchard, which, at the time of the trial, was about three years old, and which "in the ordinary course of things" (Civ. Code, sec. 3300) would in a year or two be a fruit-producing and productive property; and, as there pointed out, actions have frequently been maintained for the destruction of growing crops, notwithstanding the bare possibility that they might never mature. But there was no similar fact in the case at bar, and no reason for supposing that "in the ordinary course of things" this non-existing stock would, if created, have been of any value whatever. And, in the second place, it was affirmatively shown by the evidence that the stock, if issued, would have been of no value. Leonardt testified, and his testimony was uncontradicted, that investigations made shortly after the date of the contract showed that the material for making cement at El Toro was

entirely insufficient in amount and quality to warrant an attempt to manufacture cement therefrom, although prior prospecting had led to the belief that it was sufficient; and that he had tried to find, but had been unsuccessful in finding, any other deposit with which the manufacture of cement could have been successfully prosecuted.

We do not think that the court erred in ruling out questions asked by appellants of their witness Pirtle as to his opinion of the value of the stock, if the company had been formed and the stock issued. The questions merely recited the provisions of the contract, and from those recitals he was asked to give his opinion as to what the value of this unissued stock would have been. There were no facts stated—either real or hypothetical—as a basis for an intelligent opinion.

The judgment and order appealed from are affirmed.

Angellotti, J., Shaw, J., Henshaw, J., Van Dyke, J , and Lorigan, J., concurred.