[L. A. No. 12758. In Bank.—August 8, 1931.]

FANNETTE WINTHROP, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, WETHERBY KAYSER SHOE COMPANY et al., Respondents.

Goldman & Lieberman for Petitioner.

Edward O. Allen, John J. Taheny, R. P. Wiscocarver, Hadsell, Sweet & Ingalls, J. Hampton Hoge, Redman, Alexander & Bacon, Bronson, Bronson & Slaven, S. S. Tipton and E. E. Sawyer for Respondents.

SEAWELL, J.—This is a proceeding to review an order of the Industrial Accident Commission denying compensa-

tion to the petitioner, Fannette Winthrop, on the ground that the disability complained of was not caused by the injury suffered by said petitioner in the course of her employment by respondent Wetherby Kayser Shoe Company.

Petitioner, a woman thirty years of age, was employed as a hosiery clerk in a shoe store operated by respondent Wetherby Kayser Company in the city of Los Angeles. While waiting on a customer she climbed upon a stool to reach merchandise on a shelf. The stool tipped and she fell backwards on to the floor. Some uncertainty exists as to the date of the fall. Petitioner fixed it as January 13, 1930, in her application for compensation, and upon the hearing before the Commission she testified that it occurred on January 13th or 14th. She admitted, however, that she was not positive as to the exact date. Her lack of a more certain recollection is explainable as due to the circumstance that she did not for a time attribute her disabilities to the fall. The employer, in a report to its insurance carrier, which was introduced as an exhibit, stated that the fall took place between January 2d and 5th. There is no other evidence as to said dates being correct. Petitioner testified that she was sure it could not have been as early as January 2d.

A fellow employee assisted petitioner to rise and she finished waiting on her customer, although she felt dazed after the fall. She continued to work until January 18th. On January 25th she called her personal physician; on January 27th she was taken to the hospital, suffering acute pain in the lower abdominal region, and on January 31st she was operated on and a large ovarian tumor and her left ovary were removed. At the time she left work she did not know the exact cause of her illness. She did not then attribute it to the fall, and made no demand upon her employer for compensation or medical treatment. The operation revealed that the pedicle or stem by which the tumor was attached to the tissues of the body had become twisted in two places, thereby cutting off the blood supply to the tumor and causing a gangrenous condition, with extreme toxicity, which rendered imperative an immediate operation to save the life of petitioner. It is conceded by the Commission that the highly toxic condition and the acute symptoms of pain and distress which immediately preceded the operation resulted from the twisting of the pedicle of the tumor. The question

to be determined is whether the twisting of the pedicle was produced by the fall or, as the Commission impliedly held, was a natural development which took place as the tumor grew in size. If the result of the fall, petitioner is entitled to compensation under section 3, subdivision 4, of the Workmen's Compensation act, which provides:

"In case of aggravation of any disease existing prior to such injury, compensation shall be allowed only for such proportion of the disability due to the aggravation of such prior disease as may reasonably be attributed to the injury." (Stats. 1917, p. 833, as amended by Stats. 1919, p. 911.)

The evidence, in addition to the testimony of petitioner, consists of letters from physicians which were introduced in the case as exhibits. The petitioner's personal physician, Dr. Segall, and two physicians called in consultation upon her case, all of whom were present at and assisted in performing the operation, gave it as their opinion that the fall produced the twisting of the pedicle of the tumor. On the other hand, Dr. Bond, who examined petitioner on March 27th, almost two months after the operation, at the request of the employer, and Dr. Boller acting for the employer's insurance carrier, were of the view that the fall did not cause the twisting. Dr. Jones, medical umpire for the Commission, who expressed the same opinion, stated in his letter report that as an ovarian tumor increases in size it slips out of the pelvis into the abdominal cavity and that due to the contour of the rim of the pelvis the pedicle may become twisted, causing a strangulation of the tumor. But neither the letter of Dr. Jones nor those of the other medical men holding to the same view denied that a fall could produce a twisting of the pedicle. Rather, we think, all recognize a fall as a factor capable of producing such a result, but were of the view that it was not indicated to be the cause in the case herein for the reason that the severe pain and other symptoms did not develop sufficiently soon after the fall.

The reports of the physicians upon whom the Commission relied were not based upon a first-hand observation of petitioner's symptoms. She herself testified at the hearing before the Commission that she felt ill "right along after the fall", and seemed to get worse and worse; that she stayed until the Saturday after the fall to enable her employer to get someone to take her place; that she had inter-

mittent abdominal pains between the time of the fall and the time she quit work; that the first bad attack took place about a couple of days after the fall; that she used every atom of strength she had to "stick it through" until Saturday night; and that thereafter the pains became excruciating. The hospital report of her condition between January 27th and 31st, preceding the operation, also indicates a condition of intense abdominal pain, fever and delirium. The soreness of her abdominal region hindered the doctors from making a complete examination, and it was not until after they had operated that they were able to make an exact diagnosis. In view of the fact that the symptoms were produced by a gangrenous condition due to the cutting off of the blood supply to the tumor, her distress must of necessity have been less at the inception of the condition than after gangrene had poisoned the system.

The uncontradicted evidence shows that symptoms of which petitioner was free at the time of the fall began to develop almost immediately thereafter, becoming increasingly acute until the operation was performed. All medical experts whose reports appear recognize expressly or impliedly that a fall may cause twisting of the pedicle of a tumor. Those who observed petitioner's symptoms within a short time after the fall were of the view that the fall was the cause. Those who held to the contrary view did not see her until after the operation, and based their opinions largely on the premise that the pre-operative symptoms did not appear sufficiently soon to indicate a connection. While neither the cause of the twisting of the pedicle nor the time it occurred is capable of exact demonstration, the physicians who attended petitioner and physically observed the position and condition of the tumor and contiguous organs and tissues were in a better position to judge the length of time the condition had been developing than were those whose calculations were based upon related facts. The case does not present a true conflict of evidence. The opinions of the doctors who were of the view that the fall did not produce the twisting of the pedicle, as stated in their letter reports, were based on the theory that severe symptoms did not appear until some time after the fall. The evidence, on the other hand, shows that petitioner suffered severe abdominal pains almost immediately thereafter, although her condition naturally became

aggravated as time elapsed. Said opinions being based on a state of facts not shown by the record to exist, are not in conflict with the opinions of the doctors whose statements were based on the facts actually shown to exist by the evidence of petitioner and the doctors who attended her.

Respondents make much of the circumstance that petitioner did not at once attribute her symptoms to the fall, and did not even tell her physicians of it until after she had been at the hospital two days. A failure on the part of the employee to attribute her severe pains to the fall would not conclude her from recovering compensation if the fall was either the origin or accelerating cause of incapacity. She had suffered previous attacks of abdominal pain, although she was unaware that she had a tumor. Her physicians were not absolutely certain of the existence of a tumor until she was operated upon. A recurrence of the abdominal pains may have indicated to her a return of the old complaint rather than a changed pathological condition arising from the fall. An employee is not to be deprived of compensation because he fails to make a correct medical diagnosis. (See *Singer* v. *Industrial Acc. Com.*, 105 Cal. App. 374 [287 Pac. 567].) Nothing appears to impeach the good faith or veracity of petitioner. Respondents do not dispute her having fallen from the stool.

The physicians who made physical examination of the internal abdominal area affected and treated petitioner had before them original evidence which was not before the physicians who gave their opinions based on a statement of facts without opportunity to investigate the original condition attempted to be described. Giving the statute the liberal construction which section 69 (Stats. 1917, p. 877) enjoins upon courts, we are of the view that petitioner is entitled to industrial compensation.

The order denying compensation to petitioner is annulled.

Richards, J., Curtis, J., and Preston, J., concurred.

SHENK, J., Dissenting.—I dissent. On the record presented I cannot avoid the conclusion that the court has invaded the field of the fact-finding body and, by weighing the evidence, has erroneously concluded that there is no substantial evidence to support the findings of the Commission.

The question of fact before the board was whether the accident was the causal or contributing agent in bringing about the twisting of the pre-existing tumor. On this issue the evidence before the board was the expert testimony of physicians and surgeons. The conclusions of these experts were divergent, one group of experts testifying that it was and another group testifying that it was not. The credibility of neither group was impeached nor reflected upon, and the conclusions of one group would seem to rest upon as substantial foundations as the other. This is true, at least to such an extent as that the court as matter of law should not compel the acceptance of the conclusions of one as against the other. The Commission is the exclusive judge of the weight of the evidence before it and this exclusive function would apply to expert testimony as well as any other. I think the order should be affirmed.

Waste, C. J., and Langdon, J., concurred.

Rehearing denied.

Waste, C. J., and Langdon, J., dissented.