Daniel F. CHITWOOD et al., Appellants,

v.

COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellees.

Court of Appeals of Kentucky.

June 4, 1965.

**382**

W. Scott Miller, W. Scott Miller, Jr., Louisville, for appellants.

Robert F. Matthews, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Raymond F. Bossmeyer, Louisville, for appellees.

PALMORE, Judge.

The appellants owned a 64.5-acre tract of land abutting the west side of Hurstbourne Lane in Jefferson County. In December of 1962 the Commonwealth condemned 23.61 acres of it for the construction of Interstate Highway 64, leaving the owners a tract of 31.94 acres on the north side and two separate tracts of 2.38 acres and 6.57 acres on the south side of the new highway. The 31.94-acre and 6.57-acre remainder parcels have frontage upon and access to Hurstbourne Lane adjacent to the interchange lanes leading to and from I-64. The 2.38-acre tract is landlocked. The owners appeal from a judgment following a jury verdict awarding them $60,-000 as the difference between the fair market value of the whole tract immediately before the taking and the fair market value of the three tracts remaining immediately thereafter. Cf. Commonwealth, Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 844 (1963).

The appeal rests on two arguments, (1) that the amount of the verdict was not within the extreme limits of the valuation testimony and (2) that the trial court erred in permitting the valuation witnesses to consider the prospect of rezoning in estimating the value of the property left to the owners after the taking.

■ In support of the first point appellants cite Pierson v. Commonwealth, Ky., 350 S.W.2d 487, 489 (1961), and Commonwealth, Dept. of Highways v. Cardinal Hill Nursery, Ky., 380 S.W.2d 249, 253 (1964), in each of which it was held that a verdict for less than the lowest figure at which any of the witnesses estimated the value of the *property taken* could not be sustained. This, however, is a post-Sherrod case in which the testimony was confined to "before" and "after" values and there was no separate valuation of the land taken. It was tried before issuance of the opinion in Commonwealth, Dept. of Highways v. Priest, Ky., 387 S.W.2d 302, 306 (1965), requiring that henceforth the

jury be directed to set forth in its verdict both the before and after values and the difference. This particular verdict was as follows:

"We, the jury, find for the appellees and award them the sum of $60,000."

The lowest difference between before and after values given by any individual witness was $60,675, which is $675 more than the amount of the verdict. Nevertheless, it was within the range of the evidence the jury was permitted to consider. For example, the Commonwealth's witness Rietze gave before and after values of $132,500 and $67,000, and its witness Kennedy gave before and after values of $125,000 and $64,325; it would not have been incongruous or unreasonable for the jury to rely on Kennedy's before value of $125,000 and Rietze's after value of $67,000 and return a verdict of $58,000, which is $2,000 less than the amount actually awarded. We do not suggest that the jury could have taken the lowest before value given by a Commonwealth witness ($125,000) and the highest after value given by a witness for the landowners ($132,000) and awarded nothing. Our opinion is simply that in this case the jury could reasonably have found before and after values that produced the resulting award of $60,000.

The second point raises a question that was mentioned but not decided in the recent case of Tharp v. Urban Renewal and Community Development Agency, Ky., 389 S. W.2d 453 (rehearing denied April 30, 1965).

"When * * * a particular use of property is prohibited or restricted by law, but there is a reasonable probability that the prohibition or restriction will be modified or removed in the near future, the effect of such probability upon the value of the property may be taken into consideration." 1 Nichols on Eminent Domain § 219, p. 669.

"In other words, the general rule is that present market value must ordinarily be determined by consideration only of the uses for which the land 'is adapted and for which it is available.' The exception to this general rule is that if the land is not presently available for a particular use by reason of a zoning ordinance or other restriction imposed by law, but the evidence tends to show a 'reasonable probability' of a change 'in the near future' in the zoning ordinance or other restriction, then the effect of such probability upon the minds of purchasers generally may be taken into consideration in fixing present market value." Long Beach City High School Dist. v. Stewart, 30 Cal.2d 763, 185 P.2d 585, 173 A.L.R. 249, 254 (1947).

In the Long Beach case the California Supreme Court held that because the zoning classification existing at the time of the condemnation had been enacted only three years before, it would have been "speculative to assume that a change in the provisions of the zoning ordinance is likely to occur." For a similar reason (a recent refusal to reclassify) this court in the Tharp case declined to decide whether under other circumstances it would have been proper to consider prospective rezoning as a factor bearing upon the value of the property in question.

The evidence to which objection is made in this case related to the value of the remaining property fronting on Hurstbourne Lane after the taking. At the intersection of Hurstbourne Lane and I–64 (which at this location has now been completed) a "diamond" interchange has been constructed, meaning that there is a connecting access ramp in each of the four sectors of the intersection. Witnesses testified that the highest and best use of land located adjacent to such an interchange is for commercial purposes, in view of which it is likely that the zoning authorities, recognizing the changed conditions of the property, will reclassify it for commercial use. It was further shown that on April 4, 1963, the land directly across Hurstbourne Lane from the 6.57-acre remainder tract of appellants actually was rezoned from residen-

**384**

tial to "highway service" use. Our conclusion is that there was sufficient evidence of probable reclassification in the near future to justify its consideration as a factor bearing upon the value of the property immediately after the taking. We accept as reasonable and valid the principles quoted above from Nichols and the Long Beach opinion.

 When evidence has been introduced tending to show enough prospect of rezoning to affect the price a willing buyer would have paid and a willing seller would have accepted for a piece of property (either immediately before or immediately after the taking, as the case may be), a valuation witness may take that circumstance into consideration, but he may not testify what the property would be worth in the event of such rezoning, or what it would be worth for purposes inconsistent with its classification at the time of the taking. Long Beach City High School Dist. v. Stewart, supra. In this case there were one or two instances in which, through skill and persistence, counsel for the Commonwealth succeeded in slipping past the zealous guard of the trial court by eliciting a witness's opinion as to what the property would be worth for commercial purposes. Nevertheless, in a host of admonitions, remarks, and rephrasing of questions asked by counsel, the court made it abundantly clear to the jury that the likelihood or unlikelihood of a future zoning reclassification was to be considered only insofar as it affected the fair market value of the property at the time of the taking. Perhaps no one of these various interjections stated the principle fully and accurately, but collectively they were reasonably adequate to get the right idea across to the jury. We quote representative examples as follows:

"Well, I think the jury understands, Judge Miller, what the present zoning is, and I think the jury understands that it can not be used for the purposes mentioned unless the zoning is changed. But I

think under the law they may show what the circumstances are, and the jury may take into consideration whether or not there is a reasonable probability that it will be changed but that it does involve a certain element of speculation I have to agree with you. But I think under the law they may show what the conditions are and the jury may take into consideration whether or not at some future time there is a reasonable probability that it will be changed based on what has happened with reference to similar situations," * * *

* * * * * *

"The jury will understand that at present the property is not zoned commercial. I overrule the objection, allowing the jury to take into consideration whether or not it is adaptable to be used for commercial purposes; but the jury will keep in mind that in order for it to be used for commercial purposes it would have to be rezoned, there would have to be a change in zoning classification by the proper governmental authority."

* * * * * *

"THE COURT: (Interrupting) Gentlemen, just a minute. The question as to the present zoning of the property being residential, the question of a change of zoning, it depends entirely on the facts and circumstances, isn't that right, Mr. Koch?

THE WITNESS: Yes, sir.

THE COURT: They will change certain locations, they will decline to change certain locations?

THE WITNESS: Yes, sir.

THE COURT: There isn't any certainty as to what an administrative body is going to do. Now, I think the jury understands that."

* * * * * *

"THE COURT: Judge, I'll let you put it in by way of avowal, but I have to sustain the objection as to what its value would be as commercial because it is not now commercial. I think the jury, as I have stated

a number of times, can take into consideration that there is a possibility that the zoning might be changed. Mr. Koch, does a purchaser of property take into consideration what the future potentialities of the property might be?

THE WITNESS: Yes, sir.

THE COURT: That's the basis on which I'm admitting it."

\* \* \* \* \* \*

"THE COURT: (Interrupting) Mr. Koch, you didn't listen to that question. Now, I'm going to re-state it again: What Judge Bossmeyer is asking you is that, taking into consideration that the remainder of this property which he has asked you about is adaptable for being used for commercial purposes, what in your opinion, taking that into consideration, the possibility that in the future it might be changed to commercial, now it is zoned residential, what in your opinion was the value of the remainder as of December the 3rd, 1962? Now, that's just a simple question."

\* \* \* \* \* \*

"THE COURT: (Interrupting) Mr. Koch, you are again misunderstanding the question. The question is: Considering that it has a potential possibility of the zoning being changed, and it is adaptable if the zoning is changed for being used for commercial purposes, what was its value as of December the 3rd, 1962, considering all those factors?"

Despite a certain amount of irregularity in the testimony relating the prospects of rezoning to the value of the property immediately after the taking, we think the trial court so clearly maintained it in proper perspective that the jury could not have been misled. Hence we do not find any prejudicial error. However, in future cases witnesses must not be permitted to say or suggest what the value would be if the property were zoned differently from the classification existing at the time in question, and the jury should be admonished that the question of whether there was

a reasonable probability of a zoning reclassification in the near future should be considered only to the extent of its influence, if any, upon the price a willing buyer would have paid and a willing seller would have accepted for the property immediately before (or after, as in this case) the taking.

The judgment is affirmed.